PD

JS 44 (Rev 06/17)

PD



# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

S.A. COMUNALE CO , INC

**(b)** County of Residence of First Listed Plaintiff    Summit
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Cipriani & Werner
450 Sentry Parkway, Suite 200
Blue Bell, PA 19422    (610-567-0700)

## DEFENDANTS

REDDY-BUFFALOES FIRE PUMP ET AL AND LACROSSE ENGINEERING, LLC.

County of Residence of First Listed Defendant    Appling and Gwinnett
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☒ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*        *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers | Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | New Drug Application | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine | Injury Product | | ☐ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☒ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☒ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | ☐ 895 Freedom of Information |
| | Medical Malpractice | | | | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS - Third Party | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
42

Brief description of cause:
Product Liability Breach of Warranty & Negligence.

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F R Cv P

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY

*(See instructions)*

JUDGE

DOCKET NUMBER   MAY 22 2019

DATE
05/20/2019

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG JUDGE



UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**19    2219**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 2900 Newpark Drive, Barberton, OH  44203 _____

Address of Defendant: _____ See Attached _____

Place of Accident, Incident or Transaction: _____ Philadelphia _____

---

**RELATED CASE, IF ANY:**

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not   related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 5/21/19    _____ Attorney-at-Law / Pro Se Plaintiff _____    53349    Attorney I.D. # (if applicable)

---

CIVIL: (Place a √ in one category only)

**A.    Federal Question Cases:**

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    *(Please specify):* _____

**B.    Diversity Jurisdiction Cases:**

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☑ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ John M. Campbell _____, counsel of record or pro se plaintiff, do hereby certify

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE 5/21/19    _____ Attorney-at-Law / Pro Se Plaintiff _____    MAY 22 2019    53349    Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)    MAY 22 2019



# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| S.A. Comunale Co. Inc. | : | CIVIL ACTION |
| v. | : | **19   2219** |
| Reddy-Buffaloes Fire Pump, Inc. and LaCrosse Engineering, LLC | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                ( )

(b) Social Security · Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos - Cases involving claims for personal injury or property damage from exposure to asbestos.                ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( X )

| | | |
|---|---|---|
| 5/20/2019 | _John M. Campbell_ (signature) | John M. Campbell |
| **Date** | **Attorney-at-law** | **Attorney for** Plaintiff |
| 610-567-0700 | 610-567-0712 | jcampbell@c-wlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

MAY 22 2019



# CIPRIANI & WERNER

### A PROFESSIONAL CORPORATION

---

### ATTORNEYS AT LAW

JOHN M. CAMPBELL
jcampbell@c-wlaw.com

450 Sentry Parkway, Suite 200
Blue Bell, PA 19422

Phone: (610) 567-0700
Fax: (610) 567-0712

www.C-WLAW.com

A Mid-Atlantic Litigation Firm

Visit us online at
www.C-WLAW.com

**19    2219**

May 21, 2019

**VIA FEDERAL EXPRESS**

Clerk, U.S. District Court
Eastern District of Pennsylvania
US Courthouse
601 Market Street Room 2609
Philadelphia, PA 19106

      RE:    S.A. Comunale Co., Inc. v. Reddy Buffaloes Fire Pump, Inc.
              Our File No.: 3589-65632B

Dear Sir or Madam:

    I have enclosed the following documents for filing:

1. Civil Action Complaint
2. Civil Cover Sheet;
3. Civil Action Designation
4. Corporate Disclosure Statement
5. Case Management Track Designation

    I have also enclosed a disk containing the documents along with a check in the amount of $400.00 representing the cost to commence this action.

    Please return a time-stamped copy to the undersigned in the self-addressed, stamped envelope provided.

---

**PENNSYLVANIA o NEW JERSEY o WEST VIRGINIA o DELAWARE o MARYLAND o WASHINGTON, DC o NEW YORK o VIRGINIA**

Thank you for your assistance.  If you have any questions, please do not hesitate to contact me.

Very truly yours,

/s/ John M. Campbell

John M. Campbell

JCA/lm6
Enclosures



**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| S.A. COMUNALE CO. INC. | : | |
| 2900 Newpark Drive | : | JURY TRIAL DEMANDED |
| Barberton, OH 44203, | : | |
|       Plaintiff | : | |
|     v. | : | |
| | : | NO.   19   2219 |
| REDDY-BUFFALOES FIRE PUMP, INC. a/k/a | : | |
| REDDY-BUFFALOES PUMP COMPANY, INC. | : | |
| a/k/a BUFFALOES FIRE PUMP, INC. | : | |
| 1 Dixie Drive | : | |
| Baxley, GA 31513 | : | |
| | : | |
| and | : | |
| | : | |
| LaCROSSE ENGINEERING, LLC. | : | |
| 3455 Peachtree Industrial Boulevard | : | |
| Suite 305-268 | : | |
| Duluth, GA 30096, | : | |
|       Defendants | : | |



**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

S.A. COMUNALE CO. INC.                          :
2900 Newpark Drive                              :    JURY TRIAL DEMANDED
Barberton, OH 44203,                            :
          Plaintiff                     :
    v.                                          :
                                                :    NO.    **19    2219**
REDDY-BUFFALOES FIRE PUMP, INC. a/k/a           :
REDDY-BUFFALOES PUMP COMPANY, INC.              :
a/k/a BUFFALOES FIRE PUMP, INC.                 :
1 Dixie Drive                                   :
Baxley, GA 31513                                :
                                                :
and                                             :
                                                :
LaCROSSE ENGINEERING, LLC.                       :
3455 Peachtree Industrial Boulevard             :
Suite 305-268                                   :
Duluth, GA 30096,                               :
          Defendants                    :

## CIVIL ACTION COMPLAINT

Plaintiff, S.A. Comunale Co., Inc., by and through its attorneys, Cipriani and Werner,

P.C., hereby files the within Civil Action Complaint and avers as follows:

## PARTIES

1.     Plaintiff, S.A. Comunale, Co., Inc., (hereinafter "Comunale") is a corporation

organized and existing under the laws of the state of Delaware with a principal place of business

at 2400 Newpark Drive, Barberton, OH 44203.

2.     Defendant, Reddy-Buffaloes Fire Pump, Inc., a/k/a Reddy-Buffaloes Pump

Company, Inc., a/k/a Buffaloes Fire Pump, Inc., is a corporation organized and existing under the

laws of the state of Georgia with a principal place of business at 1 Dixie Drive, Baxley, GA

31513.

3.      Defendant, LaCrosse Engineering, LLC, is a limited liability corporation organized and existing under the laws of the state of Georgia with a principal place of business at 3455 Peachtree Industrial Boulevard, Suite 305-268, Duluth, GA 30096.

4.      At all times relevant hereto, plaintiff, S.A. Comunale, was under contract to install and commission a fire suppression system in the Comcast Technology Center, a new 62 story high-rise building being constructed in Philadelphia by Liberty Property Trust.

5.      At all times relevant hereto, defendant, Reddy-Buffaloes Fire Pump, Inc., (hereinafter "RB Pump") designed, manufactured and placed in the stream of commerce heavy-duty fire pumps for the purpose of delivering water at a certain pressure to the upper floors of high-rise buildings as part of an overall fire suppression system.

6..      At all times relevant hereto, defendant, RB Pump sold two such pumps, Serial Nos. 15-F3423-TF5 and 15-F3422-TF5, to S.A. Comunale in connection with the fire suppression system Comunale was installing the Comcast Technology Center.

7.      At all times relevant hereto, defendant, LaCrosse Engineering, LLC, was an engineering firm which participated in the inspection, testing and commissioning of the fire pumps in question as an agent and/or representative of the manufacturer, RB Pump, and which certified to the readiness of the pumps for operation in the overall fire protection system.

8.      Approximately one year after installation, and prior to formal commissioning of the building, the aforementioned fire pumps failed, resulting in extensive cost to Comunale in the form of repairs, replacement, delays, and other incidental costs associated with maintaining the fire protection system in the building.

9.      The failure of the pumps was due to the negligence, breach of express and implied warranties and negligent misrepresentations of the defendants as more fully set forth below.

## JURISDICTION

10.     This Honorable Court has jurisdiction over this lawsuit under 28 U.S.C.§ 1332 as the plaintiffs and defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11.     Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

12.     In January, 2014, Comunale was retained by Liberty Property Trust, the owner of a property located at 1800 Arch Street in Philadelphia, to install the fire protection system in the Comcast Technology Center, a new high rise planned for that site.

13.     The specifications for that building required heavy-duty pumps to provide water to the fire protection system in the upper floors of the 62 story building.

14.     On or about June 30, 2015, Comunale purchased two fire pumps, Serial Nos. 15-F3423-TF5 and 15-F3422-TF5, from defendant, RB Pump, for the sum of $234,108.00. *A copy of the purchase order is attached hereto as Exhibit "A".*

15.     The aforementioned fire pumps were rated at 750 gpm@535 psi and were warranted by RB Pumps as sufficient to handle the load required for this fire protection system.

16.     In the purchase order, RB Pump warranted as follows:

5.     **Warranties:** Seller expressly warrants that all the materials and articles covered by this Order and other description or specification furnished by Buyer will be in exact accordance with such Order, description or specification and free from defects in material and/or workmanship, and merchantable. Such warranty shall survive delivery, and shall not be deemed waived either by reason of Buyer's acceptance of said materials or articles or by payment for them. Any deviations from this Order or specifications furnished hereunder, or any other exceptions or alternations must be approved in writing by Buyer's Purchasing Department. If any of Seller's products are found, at any time, to be defective in material or workmanship, or otherwise not in conformity with Buyer's

specifications, Buyer shall, in addition to any other rights which it may have under warranties or otherwise, have the right to reject and return such goods and to cancel other pending Purchase Orders without charge, at Seller's expense. Defective or non-conforming products may not be replaced by Seller without Buyer's written authorization.  Buyer's right of rejection shall survive this Order and shall not be deemed waived by delivery or acceptance of, or payment for, the products and services.

17.     Following installation of the pumps, defendant, LaCrosse Engineering, by and

through its principal, agent, and/or employee, Wills LaCrosse, P.E., oversaw the alignment,

testing and commissioning of the pumps.

18.     In February of 2017, Mr. LaCrosse traveled to Philadelphia to test and align the

pumps with the pump engines.

19.     In a February 23, 2017, "Job Report" to RB Pump, Mr. LaCrosse identified the

following deficiencies in the pumps:

     1.     Parallel and angular alignment *from the factory* is *"not good."*
     2.     *"Horrible"* horizontal angularity.
     3.     Misalignment which was over six times the acceptable maximum limits reflecting *"very poor workmanship on our end."*
     4.     Falk Coupling *installed with bolts placed in backwards*;
     5.     Falk Coupling which was *not greased properly*, nor was the proper grease used;
     6.     Coupling guard from the engine to the gear *did not fit properly* causing the local contractor to modify our guard to fit;
     7.     Cooling line *strainers clogged* with rubber debris;
     8.     Key slot on the Falk Coupling *cut too wide* for the key;
     9.     Gland retention bolt *not seated properly*;
     10.    *Bolts inadequate* to properly seat and secure the pumps to prevent vibration.

*A copy of Mr. LaCrosse's February 23, 2017 "Job Report" to RB Pumps is attached hereto as*

*Exhibit "B."*

20.     Despite the above defects and workmanship deficiencies, Mr. LaCrosse issued a

second Job Report to Comunale and others on the same day, indicating that the system was ready

for the commissioning performance test and failing to identify any of the deficiencies relayed to RB Pump that same day. *A copy of Mr. LaCrosse's second "Job Report" to Comunale, also dated February 23, 2017, is attached hereto as Exhibit "C."*

21.     Mr. LaCrosse further continued to misrepresent the extent of the problems and the repairs necessary to make the pumps operational in an email on May 2, 2018 to Chad Brewer (RB Pump) and Steven Johnson in which he stated that, "Our repair list is different than the one I sent to Joe (Comunale) this morning. I did not need to tell him that I was to fix the key slot nor increase set screw size and dimple the shaft." *A copy of the May 2, 2018 email from LaCrosse is attached hereto as Exhibit "D."*

22.     In early May, 2018, Comunale was experiencing issues with the pump, including sparking of the engine coupling, which were relayed to both RB Pump and Wills LaCrosse.

23.     Neither RB Pump nor Wills LaCrosse took any action to identify or resolve the issues raised by Comunale.

24.     On June 6, 2018, the pumps failed completely, resulting in a total loss of fire protection capability to the upper floors of the building.

25.     Examination of the pumps after the failure revealed extensive damage to the thrust bearings and pump shafts in both pumps, along with heat damage to surrounding parts.

26.     It was determined after the failure that the thrust bearings and shafts were inadequate to withstand the load that was expected of this equipment and that the pumps were drastically out of alignment and well beyond permissible parameters, most likely due to the fact that they were not properly anchored.

27. All of the above issues were clearly documented by Mr. LaCrosse in his February 23, 2017, Job Report and were therefore, known and/or foreseeable to Mr. LaCrosse and RB Pump during the commissioning and inspections of the pumps.

28. In addition, the pump impellers on at least one of the units was severely damaged indicating defective design and/or manufacture of the impeller by RB Pump.

29. Despite this knowledge, Comunale was not made aware of these issues and continued to operate the pumps.

30. As a result of the failure of the pump equipment, Comunale was forced to supply 24/7 fire watches for the upper floors of the building for several months while it attempted to secure the repair and/or replacement of the equipment by RB Pump and/or LaCrosse Engineering.

31. As a result of the failure of the pumps, Comunale was also required to expend a great deal of money and personnel time to determine the reason for the failure and to secure the repair of the equipment or replacement equipment, including payment of transportation costs to move the equipment between Philadelphia and Georgia so that RB Pump could determine the cause and/or remedy for the failure.

32. As a result of the failure of the pumps, Comunale was required to expend significant amounts of money to vendors and other contractors to remediate the problem and to reinstall the equipment, including LaCrosse Engineering, which charged Comunale to have Mr. LaCrosse to come to Philadelphia to reinstall the replacement equipment.

33. As a result of the failure of the pumps, Comunale incurred incidental costs and delays in the completion of its contract with Liberty Property Trust and the general contractor, all to the detriment of its reputation and good will.

34.     As a result of the failure of the equipment, Comunale sustained losses in excess of $400,000.00 relative to the event, not including attorney's fees and other costs to which Comunale might be entitled.

## COUNT 1

## PLAINTIFF v. DEFENDANT, REDDY-BUFFALOES FIRE PUMPS, INC.

## BREACH OF EXPRESS WARRANTY

35.     Plaintiff hereby incorporates by reference the preceding paragraphs contained in this Complaint as if same were fully set forth herein at length.

36.     Defendant, Reddy-Buffaloes Fire Pumps, Inc., sold the products in issue to the plaintiff, Comunale, and delivered those products on or about July 7, 2015. The units were installed in or about 2017.

37.     Defendant, RB Pump, expressly warranted the merchantability of the products and further warranted that they would be free from all defects in material and/or workmanship. *See Exhibit "A."*

38.     Plaintiff, Comunale, notified defendant, RB Pump, immediately of its breach of warranty upon failure of the equipment on June 6, 2018.

39.     Plaintiff, Comunale, relied upon the warranties made by defendant, RB Pump, both written and verbal, that the products were merchantable and free from defects in either materials or workmanship.

40.     The losses sustained by Comunale as described above were due to the sale by RB Pump of defective products which were not suitable for their intended purpose and that were manufactured contrary to the warranties made by defendant, RB Pump.

41.     Defendant, RB Pump, represented that the pumps it manufactured were suitable for heavy-duty fire protection situations consistent with the specifications of the Comcast Technology Center.

42.     The subject pumps failed less than three (3) months after the inspection by LaCrosse Engineering and after limited use, which clearly evidenced that the products were not suitable for this particular project as represented by the defendants.

43.     The subject pumps were unfit for the purposes intended and contained defects in both materials and workmanship, and therefore plaintiff is entitled to recovery of the purchase price and/or cost of replacement of the pumps, whichever is greater, and any and all resulting consequential damages.

44.     As a result of the foregoing, defendant, RB Pump is liable to the plaintiff for the breach of express warranties.

45.     As a result of defendant's breach of warranty, plaintiff suffered significant losses, including cost of replacement, repair, personnel time to remedy the lack of fire protection and to restore the fire protection system to comply with its own contract with the building owners and contractor.

46.     As a result of defendant's breach of warranty, and failure to remedy said breach, plaintiff, Comunale, has been obligated to spend significant amount of personnel and attorney time to remedy the situation and pursue defendants for recovery of those damages.

WHEREFORE, plaintiff, S.A. Comunale Co., Inc., hereby demands judgment in its favor and against defendants for compensatory damages together with costs, interest, attorney's fees and any other damages allowed by law.

## COUNT II

## PLAINTIFF v. REDDY-BUFFALOES FIRE PUMP, INC.

### BREACH OF IMPLIED WARRANTIES

47.     Plaintiff hereby incorporates by reference the preceding paragraphs contained in this Complaint as if same were fully set forth herein at length.

48.     Pursuant to the Pennsylvania Commercial Code, 13 Pa. CS. § 2314-2315, defendant, RB Pump, impliedly warranted the merchantability of the product and its fitness for a particular purpose.

49.     Defendant, Reddy-Buffaloes Fire Pumps, Inc., sold the products in issue to the plaintiff, Comunale, and delivered those products on or about July 7, 2015.  The units were installed in or about 2017.

50.     Defendant, RB Pump, impliedly warranted the merchantability of the products and that they were fit for the particular purpose in this project.

51.     Plaintiff, Comunale, notified defendant, RB Pump, immediately of its breach of warranty upon failure of the equipment on June 6, 2018.

52.     Plaintiff, Comunale, relied upon the implied warranties made by defendant, RB Pump, that the products were merchantable and fit for a particular purpose.

53.     The losses sustained by Comunale as described above were due to the sale by RB Pump of defective products which were not suitable for their intended purpose and that were manufactured contrary to the implied warranties made by defendant, RB Pump.

54.     Defendant, RB Pump, impliedly warranted that the pumps it manufactured were suitable for heavy-duty fire protection situations consistent with the specifications of the Comcast Technology Center.

55.     The subject pumps failed less than three (3) months after the inspection by LaCrosse Engineering and after limited use, which clearly evidenced that the products were not suitable for this particular project as represented by the defendants.

56.     The subject pumps were unfit for the purposes intended and contained defects in both materials and workmanship, and therefore plaintiff is entitled to recovery of the purchase price and/or cost of replacement of the pumps, whichever is greater, and any and all resulting consequential damages.

57.     As a result of the foregoing, defendant, RB Pump is liable to the plaintiff for the breach of implied warranties.

58.     As a result of defendant's breach of warranty, plaintiff suffered significant losses, including cost of replacement, repair, personnel time to remedy the lack of fire protection and to restore the fire protection system to comply with its own contract with the building owners and contractor.

59.     As a result of defendant's breach of warranty, and failure to remedy said breach, plaintiff, Comunale, has been obligated to spend significant amount of personnel and attorney time to remedy the situation and pursue defendants for recovery of those damages.

WHEREFORE, plaintiff, S.A. Comunale Co., Inc., hereby demands judgment in its favor and against defendants for compensatory damages together with costs, interest, attorney's fees and any other damages allowed by law.

## COUNT III

## PLAINTIFF v. DEFENDANTS, REDDY-BUFFALOES FIRE PUMP, INC., AND

## LaCROSSE ENGINEERING

### NEGLIGENT MISREPRESENTATION

60.     Plaintiff hereby incorporates by reference the preceding paragraphs contained in this Complaint as if same were fully set forth herein at length.

61.     Prior to the failure of the subject pumps, representatives of LaCrosse Engineering, LLC, including but not limited to its principal, Wills LaCrosse, inspected, tested and performed alignment on the subject pumps and found numerous deficiencies in the manufacture, workmanship and materials utilized.

62.     Wills LaCrosse communicated these deficiencies to RB Pump in a Job Report on February 23, 2017. *See Exhibit "B".*

63.     Despite these numerous and serious problems with the workmanship and design of the pumps, neither Mr. LaCrosse, nor RB Pump, communicated these issues to Comunale so as to prevent the potential failure of the units in the future.

64.     In fact, Mr. LaCrosse negligently omitted these deficiencies when he issued a second Job Report that same day to Comunale and approved the pumps for further testing and operation. *See Exhibit "C."*

65.     The potential failure of the pumps was clearly foreseeable to LaCrosse Engineering and RB Pump at the time of Mr. LaCrosse's inspection and commissioning and Mr. LaCrosse and RB Pump owed a duty to Comunale to relay any and all deficiencies at that time.

66.     Defendants, LaCrosse Engineering, LLC, and Reddy-Buffaloes Fire Pump, Inc., negligently misrepresented the condition, functionality and workmanship of the pumps in question which caused Comunale significant damages in the repair, replacement of the pumps and protection of the subject building.

67.     Defendants' misrepresentation of the condition of the pumps and/or their ability to perform as warranted, caused plaintiff to suffer the losses outlined above.

WHEREFORE, plaintiff, S.A. Comunale Co., Inc., hereby demands judgment in its favor and against defendants for compensatory damages together with costs, interest, attorney's fees and any other damages allowed by law.

## COUNT IV

## PLAINTIFF v. LaCROSSE ENGINEERING, LLC

### NEGLIGENCE

68.     Defendant, LaCrosse Engineering, LLC, represented to plaintiff that it was qualified to inspect, commission and operate said pumps and to identify any operating or manufacturing deficiencies.

69.     Defendant, LaCrosse Engineering, was negligent in failing to identify and/or rectify deficiencies in the manufacturing or installation of said pumps which resulted in the failure of the pumps and the damages sustained by the plaintiff.

70.     Prior to the failure of the subject pumps, representatives of LaCrosse Engineering, LLC, including but not limited to its principal, Wills LaCrosse, inspected, tested and performed alignment on the subject pumps and found numerous deficiencies in the manufacture, workmanship and materials utilized in the manufacture of the subject pumps.

71.     Wills LaCrosse communicated these deficiencies to RB Pump in a Job Report on February 23, 2017. *See Exhibit "B".*

72.     Despite these numerous and serious problems with the workmanship and design of the pumps, neither Mr. LaCrosse, nor RB Pump, failed to recognize the significance of the issues and failed to either remedy the issues or communicate the issues to Comunale so as to prevent the potential failure of the units in the future.

73.     In fact, Mr. LaCrosse negligently omitted these deficiencies when he issued a second Job Report that same day to Comunale and approved the pumps for further testing and operation. *See Exhibit "C."*

74.     Based upon the February 23rd Job Report, the potential failure of the pumps was clearly foreseeable to LaCrosse Engineering and RB Pump at the time of Mr. LaCrosse's inspection and commissioning and Mr. LaCrosse and RB Pump owed a duty to Comunale to relay any and all deficiencies at that time.

75.     Defendants, LaCrosse Engineering, LLC, and Reddy-Buffaloes Fire Pump, Inc., negligence in failure to notify Comunale of the condition, functionality and workmanship of the pumps in question, or failure to remedy the conditions caused Comunale significant damages in the repair, replacement of the pumps and protection of the subject building as outlined above.

WHEREFORE, plaintiff, S.A. Comunale Co., Inc., hereby demands judgment in its favor and against defendants for compensatory damages together with costs, interest, attorney's fees and any other damages allowed by law.

Respectfully submitted,

**CIPRIANI & WERNER, P.C.**

By:     */s/ John M. Campbell*
John M. Campbell (JC1088)
Darren L. Harrison
450 Sentry Parkway West, Suite 200
Blue Bell, PA 19422

Attorneys for Plaintiff,
S.A. Comunale Co., Inc.

# EXHIBIT A

mc
E-mail   √ 11/12/18
Brock

Equal Opportunity Employer



| PURCHASE ORDER | |
|---|---|
| **DATE** | **P.O. Number** |
| 6/30/2015 | 298324 |

## SELLER

Attention Steven Johnson
Buffaloes Fire Pump Inc.
1 Dixie Drive
PO Box 557
Baxley, GA 31513
Phone 912-367-6345 x308
Fax 912-367-5024

## BUYER

SA Comunale Philadelphia
603 Ryan Avenue
Westville, NJ 08093
Phone (800)299-9216
Fax (856)848-1175

## SHIP TO

Attention Joe Kiczek
SA Comunale Philadelphia
603 Ryan Avenue
Westville, NJ 08093

**IMPORTANT**

Read all terms and conditions on front and other pages. Only such terms and conditions shall constitute the agreement between the parties

| Falcon Ticket Number | Ordered By | Date Required |
|---|---|---|
| | tonya sole@comunale com | 10/5/2015 |
| **Job/Equipment Number** | **Job Name** | **Area of Fab** |
| 56072065 | COMCAST 2 | HOLD FOR APPROVAL |

| Part Number | Description | Quantity | Rate | Amount |
|---|---|---|---|---|
| XX | Fire Pumps - Per Attached Quote (Dated 11/21/14) With Comments | 2 | $118,616 50 | $237,233 00 |
| XX | Rev #1 - Equipment revised per owner review dated 08/11/15 and Reddy-Buffaloes revised submittal dated 08/12/15 | 1 | $0 00 | $0 00 |
| XX | Attached "Consent to Assignment and Assumption" must be signed and returned | 1 | $0 00 | $0.00 |
| XX | Rev 2 - Delete Fuel Oil Tanks | 2 | ($3,750.00) | ($7,500.00) |
| XX | 25% Restock Charge for the Tanks | 1 | $1,875 00 | $1 875 00 |
| XX | Shipping Costs to be Adjusted | 1 | $0.00 | $0 00 |
| XX | S A. Comunale Co , Inc. to Arrange Carrier to Pickup Fire Pumps for Delivery | 1 | $0 00 | $0 00 |

| | |
|---|---|
| Sub Total | $231,608 00 |
| Tax Rate 0% | $0 00 |
| Shipping Costs | $2,500 00 |
| Purchase Order Total: | $234,108 00 |

**Notes for Purchase Order:**

Please contact Joe Kiczek directly @ 330-352-8803, regarding ship date, shipping address, etc.

Buyer

Seller                                    λ

By _____

Please visit our website at   http //

_____

Jeff Klein, Purchasing Manager

## TERMS AND CONDITIONS

1.  Acceptance  Any delivery pursuant to this purchase order (Order) shall be conclusively deemed acceptance of the Order and terms and conditions thereof  The materials, products, goods or services covered by this Order shall be referred to as the "goods". All goods shall be received subject to Buyer's right of inspection and rejection  Defective goods or goods not in accordance with Buyer's specifications will be held for Seller's instruction at Seller's risk and if Seller so directs, will be returned at Seller's expense  If inspection discloses that part of the goods received are not in accordance with Buyer's specifications, Buyer shall have the right to cancel any unshipped portion of the Order  Payment for goods on this Order prior to inspection shall not constitute acceptance thereof and is without prejudice to any and all claims that Buyer may have against Seller

2.  Price  Seller agrees to invoice Buyer in accordance with the price stated in this Order  Invoices must be rendered in duplicate not later than the day following shipment  Seller shall attach a bill of lading or express receipt to each invoice  If Seller fails to issue an invoice, it is agreed that the price will be that stated in this Order  If a price is not stated in this Order, it is agreed that the goods shall be billed at the price last quoted, or billed at the prevailing market price, whichever is lower  This Order must not be filled at a higher price than last quoted or charged without Buyer's specific written authorization  In the event Seller charges a higher price than specified in the Order, Buyer shall not be responsible for payment until Seller re-invoices at the proper price  No additional charges of any kind, including charges for boxing, packing, cartage or other extras will be allowed unless specifically agreed to in writing in advance by Buyer  Even though Seller's quoted price may include freight, startup and other similar nontaxable items, all invoices must be itemized so that freight, startup and other nontaxable items can be identified.

3.  Payment  It is understood that the cash discount period will date from the receipt of goods or from the date of the invoice, whichever is later  C O D  shipments will not be accepted  Drafts will not be honored

4.  Delivery Instructions  Seller agrees to deliver materials stated in this Order by the date and price stated in this Order  Seller owns the materials stated in this Order until actual delivery to Buyer  Packing slips must be included in all shipments and the last copy must state "ORDER COMPLETED "  The Order number must be shown on each package, packing slip and invoice  Deliveries must be made to Buyer's receiving room, not to individuals or departments. The specific quantity ordered must be delivered in full and not be changed without Buyer's consent in writing  If multiple orders are sent under a single packing slip, then Seller must reference each individual purchase order number  Any unauthorized quantity is subject to Buyer's rejection and return at Seller's expense

5.  Warranties  Seller expressly warrants that all the materials and articles covered by this Order or other description or specification furnished by Buyer will be in exact accordance with such Order, description or specification and free from defects in material and/or workmanship, and merchantable  Such warranty shall survive delivery, and shall not be deemed waived either by reason of Buyer's acceptance of said materials or articles or by payment for them  Any deviations from this Order or specifications furnished hereunder, or any other exceptions or alterations must be approved in writing by Buyer's Purchasing Department  If any of Seller's products are found, at any time, to be defective in material or workmanship, or otherwise not in conformity with Buyer's specifications, Buyer shall, in addition to any other rights which it may have under warranties or otherwise, have the right to reject and return such goods and to cancel other pending Purchase Orders without charge, at Seller's expense  Defective or nonconforming products may not be replaced by Seller without Buyer's written authorization.  Buyer's right of rejection shall survive this Order and shall not be deemed waived by delivery or acceptance of, or payment for, the products and services.

6.  Patents  Seller warrants the material purchased hereunder does not infringe any letters patent granted by the United States and Seller covenants and agrees to save harmless and protect Buyer, its successors, assigns, customers and users of its product, against any claim or demand based upon such infringement, and after notice, to appear and defend at its own expense any such suits at law or in equity arising therefrom

7.  Fair Labor Standards Act  Seller agrees that goods shipped to Buyer under this Order will be produced in compliance with the Fair Labor Standards Act.

8.  Applicable Laws  Seller represents that the merchandise covered by this Order is not being sold or priced in violation of any federal, state or local law

9.  Cancellation  Buyer reserves the right to cancel all or any part of the undelivered portion of this Order if Seller does not make deliveries as specified, time being of the essence of this Order and contract, or if Seller breaches any of the terms hereof including, without limitation, the warranties of Seller  Seller acknowledges that Buyer's production schedules are based upon Seller's commitment that materials and services will be delivered to Buyer on dates specified herein  Time is and shall remain of the essence  If deliveries pursuant to this Order will not be made at the time agreed upon, Buyer reserves the right to cancel the Order, purchase the items contained in this Order elsewhere and to hold Seller accountable therefore  Deliveries that are late or in greater or lesser quantities than ordered or are nonconforming may be returned by Buyer without charge, at Seller's expense

10.  Interpretation of Contract and Assignments  This Order and contract shall be construed according to the laws of the State of Ohio  This Order and contract may not be assigned without Buyer's written consent   Any action arising out of this purchase order must be brought in the state courts located in Summit County, Ohio  Seller consents that those courts will have personal jurisdiction over Seller with respect to any such action

11.  Buyer's Purchase Order Controls  The Terms & Conditions of Buyer's Purchase Order control  Buyer does not accept or agree to any counteroffers, proposals, terms or conditions contained in any Seller's acknowledgement, acceptance, confirmation  or the like  The Terms & Conditions of Buyer's Purchase Order prevail and control in the event of any perceived conflict of terms

End of Terms and Conditions of Buyer's Purchase Order

# EXHIBIT B



# Job Report: Comcast Tower, 1800 Arch St, Philadelphia, PA
### Work Performed: 2/23/2017

### Pump Inspection

RB Pump, SN: 15-F3423-TF5, 6x5TF, 750gpm@535psi, 580psi/345psi, CCW, 14.75"dia, 3120rpm,
Cummins CFP15E-F10 (QSX15), SN: 79869919, 488HP@2100rpm, Tornatech Controller Z144781,
De'Ran Gear Drive, 1:1.455gear ratio, Watts1", LF-N45B-M1 regulating valve

RB Pump, SN: 15-F3422-TF5, 750gpm@535psi, CCW, Cummins CFP15E-F10, Tornatech Controller
Z144780, De'Ran Gear drive, 1:1.455 gear ratio

## 15-F3423 - FACTORY Comments

1.) BAD ALIGNMENT. The parallel and angular alignment from the factory was not good. I needed to lower the engine to achieve angular alignment. Shims were found but n ot enough but the engine could not be lowered. I had to tilt the pump using hydraulic jacks on the pump and connected piping to get it angled properly. The horizontal angularity was also horrible and required the engine to be shifted by over 1-1/2" at the back of the engine. I had to get a hot work permit, use a cutting torch, and cut (4) new holes in the base to solve this problem. This extra work could have been avoided if it was properly aligned at the FACTORY. REMEMBER – FALK couplings require a max mis-alignment of .008 " parallel or angular!! We sent out a product that was 6 times over that limit! It reflects very poor workmanship on our end.

2.) The Falk Coupling was installed with the bolts placed in backwards.

3.) The Falk coupling was not greased properly nor was the proper grease used. This coupling requires very special grease. I had none in the field. I just added 3X more non-special grease to get the correct lubrication coverage. On every Falk coupling in the future…. Use their special grease and apply the proper amount. Customers have no clue where to get the special grease. The couplings heat up if the proper amount is not used.

4.) As before on the other unit, the coupling guard from the engine to the gear did not fit properly. The local Contractor had to modify our guard to fit.

5.) I would like to recommend that on every diesel unit tested in the future we check our cooling line strainers for debris before shipping!!! This engine's cooling line was clogged with bits of rubber debris that looked as though it had come from an old gasket from our test pit. The debris blew out the strainer and damaged the pressure regulator. I indicated that the material was from their piping system. If we check our strainers, then we can be 100% positive that the debris did not come from our test pit.

6.) The key slot on the Falk coupling was cut too wide for the key. The measured dimension was .341". The key was a 3/8" key. The shaft key slot was cut correctly and the key was tight. The .016" of slop between the key and the coupling allows the coupling hub to wiggle by ¼" on its OD. The two set screws were tightened as much as possible in order to keep it from wiggling. I did not have time to fabricate a special "step" key to take up the slop. If you are concerned about this mistake we could send someone back up to the site to correct the condition.

7.) Hydrostatic Test? The pump discharge pressure was 620psi. At 620psi leaks developed at the parting flange gasket and in the cavity at the gland bolt. The gland retention bolt was not seated properly since the area under the bolt head was not spot-faced. The bolt is too close to the side of the casing. When you build the next unit, please have this area spot-faced and do a hydro test that will match what the customer will experience when the City Supply pressure is added.

Signed: _____ Willa LaCrosse, P.E.



# EXHIBIT C



# Job Report: Comcast Tower, 1800 Arch St, Philadelphia, PA
Work Performed: 2/23-25/2017

### Pump Inspection

RB Pump, SN: 15-F3423-TF5, 6x5TF, 750gpm@535psi, 580psi/345psi, CCW, 14.75"dia, 3120rpm,
Cummins CFP15E-F10 (QSX15), SN: 79869919, 488HP@2100rpm, Tornatech Controller Z144781,
D'Ran Gear Drive, 1:1.455gear ratio

RB Pump, SN: 15-F3422-TF5, 750gpm@535psi, CCW, Cummins CFP15E-F10, Tornatech Controller,
600psi transducer, D'Ran Gear drive, 1:1.455 gear ratio

## Work Performed

02/23 – F3423: 7AM-6PM

This fire pump operates at 3120rpm and is driven by a Cummins engine at 2100rpm through a speed
increasing gear drive mounted between them.

The visual inspection was good.

The alignment process was begun. The final alignment amounts achieved are as follows: pump to gear -
.008parallel@0deg & .010@090deg angular; gear to engine - .012"parallel@0deg, .010angular@0deg. The
pump had to be angled slightly. The engine had to be re-located horizontally by 1.25 and all new holes cut
into the base to secure the engine. Initial alignment was .021"parallel(engine to gear), .015"parallel(gear to
pump), .050"angular (engine to gear), and .020"angular (gear to pump). The Falk alignment requirements
require installation to be .008" for parallel & angular with a field limit of .016" angular and parallel. The
hub spacing target dimension is .125". The closest spacing the engine to gear achievable was .190". The
gear to pump was .125".

The Cummins Tech was at the site and prepared the engine for an initial start. JIC fittings (3/4"m-
JICx1/2"Fnpt) were supplied by the Cummins Tech in order to connect from the engine to the fuel piping.
The flex lines from the engine to the fuel piping were not the ones provided with the original engine
package. The grout will be placed later. The pump and gear were ready for engine starting by the afternoon.

The unit was started and operated for a short period of time. All systems were checked and the unit was
performing properly. Shut down was needed due to lack of cooling water. The pump and engine require a
minimum of 30gpm of cooling water at shutoff conditions.

The cooling line strainers were opened and found to be 100% clogged with small pieces of rubber. One of
the strainer screens had failed and allowed additional rubber to infiltrate to the pressure regulator. The
regulator was inspected and its strainer was also clogged. All the material was removed and the items were
re-assembled.

When re-running the system, the cooling water was still not sufficient for the system. All lines from the
pump to the loop were checked and found to be clear. A pressure gauge was installed in place of the air
release valve to monitor the pressure after the ½" pump tap at the cross-over (close to 300psi – normal &
un-clogged).

After several more cleanings, the regulator valves were found to be the problem. Both are recommended to
be replaced. The one with the undamaged screen showed signs of internal corrosion which may have
affected proper operation. The one with the clogged screen had been damaged due to the impact of the
debris. The valves are a Size 1, Watts, 1", LF-N45B-M1, set at 60psi.

Until the valves are replaced, the by-pass line valve has been removed and replaced with a spool piece.





## Comments

1. Additional debris may still be in the system. All strainers on both units should be checked on a regular basis until the operators are confident that the debris has been removed. Please remember that this high HP, high pressure system requires much more cooling water than normal systems. A five minute delay in providing adequate cooling water to the pump is able to elevate its temperature beyond 180deg which will starve the engine of its ability to keep its temperate at its regulated temperature at 180degF.

2. Because of the cooling issue and until the cooling water pressure regulating valves are replaced, it is recommended for operators to monitor the cooling water very carefully whenever the pump is operated. When starting in automatic mode, personnel must be in-place within 5 minutes of pump operation or risk overheating causing potential system damage.

3. The box drains were piped in galvanized. It is recommended to re-pipe these drains in un-glued PVC to allow ease in clearing future clogs. The galvanized piping itself is easy to clog while PVC generally will remain clog free. NFPA 20 allows use of PVC for this function.

4. The packing was not adjusted during the initial runs on the 23rd but was adjusted after testing on the 25th.

5. The raw water cooling lines were shifted during the alignment process. All lines were re-anchored before the 25th.

6. The system is ready for the commissioning performance test.

Signed: _____ Wills LaCrosse, P.E.





# EXHIBIT D



chad brewer    5-2-18    Wills To Chad

**From:**      Wills LaCrosse <willslac@gmail.com>
**Sent:**      Wednesday, May 02, 2018 7:58 AM
**To:**        Chad Brewer; Steven Johnson; sales
**Subject:**   Fwd: 1800 Arch Street

INTERNAL R-B

Guys - Joe called me last night. The building is being turned over in three weeks. He needs help in two areas:

1) The Cummins engine folks need to return to diagnose a governor issue on the engine. They say the engine "surges" while running. The local Cummins dealer charges up-front, and Warranty credit never seems to come back to reimburse them. They are tired of getting scammed by the Dealer. Can you exert any pressure from Wisconsin to the local dealer directly to help with their issue. Remind them that this is the tallest building in PA and a very visible project (Comcast headquarters).

2) They can't diagnose the engine without the pump exerting a load to test the governor. Currently the pump is not in running condition. Do you want to send me up to PA to fix the pump? From the pictures they took, the shaft's paint color changed next to the glands. My guess is that the bearing was cooked from the heat of the friction against the bearing housing from the coupling hub. Now, the coupling hub was not able to hold its original position from the set screws. I confirm that the set screws were super-tight when I set them at Commissioning but I had serious reservations at the time that they would hold considering the forces involved from the unit against the small set screws.

Damage needing repair = possible bad bearing + set screw(s) too small and not dimpled into shaft + key slot not proper width to contact the key on pump coupling hub + replace worn down bearing cartridge bolts

To "fix" the damage: Disconnect both couplings and piping to the parallel gear (3hrs), remove the parallel gear (estim 300 lbs, 3hrs), pull the pump coupling hub (1hr), pull and replace the IB bearing (3hrs), purchase new pump coupling hub with properly sized set screws and proper key slot width (remember my comment about the sloppy key on my report (find machine shop to broach the proper key slot width in PA 10hrs), re-assemble all parts (possible 10hrs), re-align gear drive to engine and pump (6hrs), dimple new set screws to shaft to hold better in place (1hr), test unit (4hr). ------ estimated 38hrs of work plus travel and expenses. It's potentially a full week of labor in Philadelphia.

Our repair list is different than the one I sent to Joe this morning. I did not need to tell him that I was to fix the key slot nor increase set screw size and dimple the shaft.

Also, Joe told me last night that the other engine's coupling has also started to generate sparks -

They essentially have no fire protection in the upper floors of the 80 story building if this is true.

If you want to pay for my trip let me know... $10,800 for me to fix the one unit.

I will also need a radial bearing and could use a replacement coupling hub for the pump side.

